20-963 Mr. DeGraffa, I understand you would like to reserve two minutes for rebuttal, is that right? Yes, your honor, please. Thank you so much. Thank you. You may proceed whenever you're settled at the podium. Very good. May it please the court, my name is Kai DeGraffa, I'm here for Yolanda Argueta-Ventura and her sons. They came here in August 2014 because they were tired. She was tired, she had it, she couldn't struggle anymore against the system that existed there that was against herself and her children. And just days before she left El Salvador, she had received a telephone call from a gang leader who they operate inside the lockup, that information. Mr. DeGraffa, I think we're familiar with the facts. Yeah. We appreciate you going through that. If I could at least focus you on a couple things. I think when you do get to the facts, it would be helpful if you could point out to us in what way you think the BIA erred. Okay. With respect to this fact. That's very good. But before you get there, and I understand that it was a point that was not raised in the brief, so we understand if maybe the parties aren't prepared to discuss it. But in our court, we decided, Bakhtapai, Patel. I think one question is, do we, as a court of appeals, have jurisdiction over the mother, Ms. Ventura de Argueta's petition for review, as distinct from the petition for review on behalf of her children? Given that, in her case, we're dealing with the reinstatement, the prior removal order, and that the only thing, I understand, that was at issue in the current proceedings was statutory withholding of removal and cat relief. So I think the question would be, if she were bringing this petition for review on her own right now, let's say there weren't two dependent children, it seems that under Bakhtapai Patel that we would not have jurisdiction over her. Now, you may tell me that we're wrong. I'm wrong on that point. But if we are correct on that point, then how does the consolidation of these proceedings matter, if at all? In other words, would the fact that her sons would seem to have a disputed right to bring a petition for review here, does she get to sort of piggyback on that? Or is the fact that the consolidated proceedings below were, in fact, consolidated, does that change her analysis? So, again, I'm not sure that us bringing this on you at this point is going to allow you enough time to respond. But if you have any thoughts on that, I think we'd be interested in hearing. Thank you, Your Honor. You're absolutely right. That was an issue that came up very recently with the case law, including the decisions that have been coming out of the Supreme Court. I don't know how, I mean, other than it is an authoritative decision, how we get around Section 241, a statute that mandates withholding if it is found that the person, that there is at least a 51% chance. Oh, I'm not saying that the BIA and the IJ, yeah, I'm not saying that the immigration authorities as an executive matter should not have. I think the only question is what is our appellate jurisdiction from a statutory standpoint over the petition for review? Let me just be clear, I'm not suggesting that she wasn't eligible for these things. My question is merely our appellate jurisdiction as a statutory matter. Well, even if, and certainly if there was additional time for leave to brief those other issues, I would really appreciate it. However, as a separate matter, I would think that at a very minimum, the court would have jurisdiction to review the denial of the CAT claim, because the CAT claim is not in and of itself a withholding claim. What it is, it's withholding of removal based on CAT. I mean, we colloquially talk about withholding of removal in CAT claims, but both of them are withholding of removal from a removal to a particular country. Correct. And that's why I think Bakhtapai used different nomenclature and talked about statutory withholding as opposed to CAT relief. But both of them come in the form technically of withholding of removal, right? Yes, except there's deferral of, there's withholding of removal under CAT, and then there's deferral of removal under CAT, which she would certainly qualify for, and I don't see. And how does that matter with respect to the Bakhtapai question, which is, is it a final order of removal? Whether it's deferral of removal or withholding of removal, it would all seem to fall within the same pool of, I guess you would call them, administrative actions that do not constitute a order of removal. That's certainly an interesting question, but whereas a district court would have independent jurisdiction to review a deferral CAT claim, I think this court would certainly have, independent of the final order of removal, Your Honor, because under 1252, this court has jurisdiction to review everything that is bundled up with the final order of removal. Point take. A district court, this court has also found, I don't remember the site, it exists. A district court has independent jurisdiction to review CAT relief, and certainly this court would have jurisdiction to review the denial or the approval of a claim under CAT that was filed with the district court. I would certainly imagine so. I don't, and so that operates independently. And I understand, I think you just said that you don't recall the case off the top of your head. I certainly don't recall such a case, but that doesn't mean it's not there. You're saying that a district court has independent jurisdiction to review a denial of CAT relief? You can file, affirmatively file, a CAT claim with the district court. Let's say you're somebody in that situation that needs to do that. You can get a district court to hear your petition for relief under CAT, under the CAT regulations, and certainly a denial of that relief would then follow to this court to review that. And there you would have jurisdiction. And again, I appreciate that we're sort of springing this issue on you. And I don't know if you would mind maybe redirecting to where I think you were starting, which is the merits of the case. And if you wouldn't mind, just again, when you do talk about the facts, if you wouldn't mind tying them to where you think there's error in the administrative proceedings. So rather than just reciting all the facts, but what do you think that the BIA got wrong, what did they overlook, or what the standard of review is, that sort of thing. Fair enough, Your Honor. So let me address that question with responding to the government's letter that was just sent in and filed with the court on October 16th, just not too long ago, a few days ago. I didn't have an opportunity to respond to that letter in writing, but I'd appreciate an opportunity to respond to it now. Yeah, please. Really because I think it is really the crux of the whole cake here. So in their first point, they say matter of AB and these decisions were recently vacated by Attorney General Garland. But that doesn't really matter because the government's dispositive no-nexus arguments are based on the board's and the Second Circuit's precedent predating AB1, including matter of SEG, matter of MEVG, and Uccello-Gomez v. Mukasey. Their second point is the very same argument that there's no nexus on the social group vis-a-vis family, recognition of family as a social group under our case law. With the first one and with the second one, that's really hard to know. It's really hard to know because both the IJ and the board's decisions are permeated with these infirm decisions that were vacated by the court. I can give you an example. Matter of MEVG, which the government says it's relying on or what the IJ and the board relied on, says that this decision that SEG should never be read as a blanket rejection of all the factual scenarios involving gangs and gang recruitment and so on. It's at matter of MEVG at page 251. And yet here, that's exactly what the IJ did. The IJ, the immigration judge, it's on page 33 of the addendum, said, yet as stated above, neither, this is a blanket statement, exactly what MEVG counsels IJs not to do. Yet as stated above, neither Salvadoran youth who have been subjected to recruitment efforts by the gang nor members, family members of such youth constitute a particular social group. See SEG. And to the extent that the minor respondents advance the same family social group claim, it's rejected here. That's exactly what MEVG said not to do. With the second point, under matter of LEA, there's the whole issue with respect to the nexus. In other words, there's the claim, the argument by the government that both the IJ and the BIA said that she hasn't proven that this was on account of her family membership. And yet everything in this record from her children, from she herself being contacted by the gang leader from out of the jail, from her husband having to pay off gangs in order to keep his own mother alive, from her children being accosted and targets of the recruitment efforts, just days before she left El Salvador when she was stopped on the road. And- Counselor, can I just interrupt you? Yeah. So am I understanding your argument to say these are all facts in the record that might very well have led the administrative authorities to reach a different decision had they had the new versions of the AG's views on these two matters? It could very well have, Your Honor. Absolutely. Is that what you're arguing? You're basically arguing for remand, for reconsideration in light of those two? Based on the vacature, at a very minimum, Your Honor, yes. Absolutely. I mean, how would we know? After reading a statement like that from the IJ, you know, where- Counselor, you said that was on page 32 of the addendum? It's page 33 of the addendum. 33. Okay. Yeah. And that's talking about the children. Mm-hmm. Exactly. Right. And it's all because we have two things going on here. We have the political or imputed political opinion, this family's refusal to pay rent, this family's refusal to join gangs, and the audacity of Jolanda Arregueta to file a police report, you know, after her own experience where after she was herself raped and the police came to her door and said, don't file charges against the rapist. So what do you do, though? I'm just looking at page 33. Mm-hmm. And I see the citation to SEG, I guess it's with respect to the gang recruitment efforts. The following sentence says, to the extent the minor respondents advance the same family social group claim as discussed above, which I understand is relating to the mother, that claim fails for the same reasons. And when you go back and look at the discussion about the mother and the family, I understood that as having been rejected on nexus grounds, basically saying not because the family is not a recognizable social group, but I thought she had ruled on lack of nexus. Except, Your Honor, this judge is making his evaluation based on his understanding of what SEG informs him to do. And he's saying it right here. He's saying SEG tells me that I can't consider these recruitment efforts against this group of young children from this family. I'm asking you whether the opinion on page 33 is, at least arguably, offering different reasons for rejecting the family as a social group claim and the youth gang recruitment claims. Because I see what you're saying, whether it's right or wrong, I don't know. I see what you're saying with respect to the SEG citation. But the following sentence, rejecting the family social group claim, seems to cross-reference the ruling a page or two earlier about the mother, which I thought is based not on, hey, this is not a cognizable social group, but instead there's simply no nexus to the group, even assuming there were such a family group that's cognizable. That's my question. I see. I now understand what your point is, Judge. Thank you. So I'll go back to what I was saying about the government's second point in their letter, about the vacature of the 2018 and prior decisions of matter, 2019 decisions in matter LEA, where those decisions were affecting and that like precedent was affecting, and this was also, if I'm not mistaken, where these decisions were also affecting the IJ's analysis of family as a social group. And so I think that where this IJ had an outlook towards social group vis-a-vis family and gang recruitment directed at this family and gang recruitment directed on political opinion grounds, which, by the way, they misstated or misapplied alias Zacharias in this case for different reasons, where this judge's decision and analysis was infected by his understanding of these decisions, I would say that a remand would be appropriate. Okay. I know we've kept you up long past the red light. Unless there are any other questions from the panelists now, why don't we hear from your adversary? You've reserved two minutes for rebuttal. Thank you. Good afternoon. Kevin Conway for the government. Good afternoon. To get to your first point, Your Honor, regarding the jurisdictional aspect, I have just reviewed Patel myself for the first time. And, of course, it wasn't briefed and it wasn't an issue before the court before. My understanding is that both the withholding of removal claim and the CAT claim, because they are not final orders of removal, this court under Patel does not have jurisdiction to consider those issues. So that would necessarily, I guess, negate the lead petitioner's case in this case. I don't know what effect that would have on the minor petitioners. It's a consolidated case, I guess, that the court could sever the mother's petition from the children that have theirs go forward because they did file asylum claims as well as CAT claims. So they have separate claims going forward based on, you know, certainly the same set of facts. But that could be something that the court could, I believe, could evaluate their claims, the factual part of their claims. Do you read Dr. Patel as saying that Congress has sort of withheld our jurisdiction to review withholding-only cases or that because of the 30-day appeal timing, even though you can normally bundle up your challenge to withholding with, for example, the reinstatement decision as being a removal order, the timing in most cases, or at least in that case, fell outside of what the statute contemplated because the claim wasn't tied to a pay removal order? I don't believe the court, I mean, they're trying to take away your jurisdiction over withholding in CAT claims. What the decision, from what I read, means is that from the date of reinstatement, the date that the DHS reinstates the order, the prior order of removal, you have 30 days from that date to file your PFI, your petition for review in this court or in any court. What I'm trying to figure out is whether because the substantive analysis didn't rely on sort of a congressional desire to withdraw jurisdiction but a more timing-based issue, whether in this case where the withholding claim is part of a consolidated petition in which there is an order of removal at issue, whether that's enough to sort of fall outside of the proscription of Bakhtabai Patel. Well, I don't know if I understand your question. It's the boys, the kids. The kids do have a final removal order. Right, they do. And I don't know that, I guess for lack of a better word, that the mother can now piggyback on to their claim. Usually it's the other way around. They're, you know, the juvenile petitioners, or minor petitioners I should say, are riders on the parents. I don't know that you can go the opposite direction because from what I understand from Patel, she doesn't have a final removal order anymore, or doesn't have a final removal order at all. And your jurisdiction to look at those types of claims, withholding and CAT, has been, you know, has been deleted, for lack of a better word, only because of the timing of them. Not because she doesn't have a substantive claim, but only because the claim wasn't brought at the proper time. So how would that work as a practical matter then? In your view, consistent with Dr. Patel, is the idea that then the mother here, upon reinstatement of her order, should have immediately filed a PFR. The sons would have then been seeking this relief through all these channels, all the way up administratively. Would then Ms. Ventura have been required to, what, you know, ask for us to hold the petition in abeyance while she sought these other things? You know, she could have been appealing or petitioning for review of the reinstatement order, and then had a parallel track where she was pursuing withholding and CAT relief before the administrative agencies, and then just asked us to sort of park things? Because Dr. Patel, I think, recognizes that under, what's her old case, Garcia, that she would have had the right to petition for review of the reinstatement of her removal order, had she done it promptly within 30 days, right? Correct. That's my understanding as well. So is that the mechanism? I'm just brainstorming. It sounds like there's got to be a way that she could have maintained her right to review at least of the removal, and then I suppose if everything else caught up, if that PFR were held in abeyance, and then there were other things happening before the administrative agency, would they then have been caught up in the zipper clause with her timely PFR? It all seems very odd. And, of course, this is all new, so I'm not sure that I don't have the answer to that question specifically. But from my understanding of what this court has said, or what the court has said, is that those claims cannot be brought at this time. Your jurisdiction has been- Although I think, as Judge Robinson said, we've never said what happens when you have a consolidated petition, where you have what is concededly a, in fact, two removal orders against these two juveniles with overlapping claims raised. Does 30-day get tied to a removal order, and that only brings along certain petitioners, or does it bring along all related claims, or what gets attached to that final removal order? I'm not sure what you mean by what gets attached to that. In her sense, she has a final removal order, but it's dated 2016, I believe. So each removal order is personal to an individual person, and therefore, the time to appeal in your view, or to file a petition review, is linked to each of those individual removal orders. That's my understanding, yes. So the government's position is we do not have jurisdiction over the mother's claim? Is that right? According to the latest case law, yes. All right, so as to the children's claim, in your view, do we have jurisdiction? I don't know how the consolidation piece of that works. I understand. Well, you say you don't know. So I would say that- The government is here telling us what their side of the case is. So I want to know, do you think we have jurisdiction over the children's claim? It would appear that you do, because they have an asylum claim. Okay. Oh, only over the asylum claim? Well, no, they have an asylum- I mean, their claim involves a CAD claim as well, but they have an asylum claim, as opposed to the mother did not have an asylum claim, because she was in with only- But I thought it's not the asylum claim that gives us jurisdiction, it's the removal order that gives us jurisdiction. Correct. I understand they also have an asylum claim, but that's not what gives or takes away our jurisdiction, right? Right, no. Their removal order, again, this is new, so I don't know. I haven't looked at anything else other than the case law itself, and I don't know that it's been vetted through our office yet as to how these cases are going to work, especially in a consolidation issue, I mean a consolidating case. Are you just giving us your best estimate of what you think the law is right now? And, again, I understand we're sort of raising this in the first instance with you, or would you need to go back to your office to find out what is the considered position of the Department of Justice on this relatively novel issue? Right, certainly I can't speak for the department on- Well, I think we need to know that. Yes, I'm not speaking from the department. You're asking me what I think is here based on what the court- We're not asking you just to spitball. We understand. Right. We're asking you what is your official litigating position, and if you're not prepared to give us your official litigating position, I think we need to know that. Right. No, I'm not here to give you, because this wasn't something that was raised as part of this- Okay. You're not prepared on the jurisdictional point, is that right?  All right. Let's pass that for just a moment. If we have jurisdiction of the children's claim, do you think on the merits it needs to be remanded so that the agency can reconsider in light of the attorney general's vacation of a cited opinion? I don't think so, Your Honor, because what you touched on earlier was why the main point of LEA was focusing, of course, on the family PSG, a particular social group. In the IJ's decision, the immigration judge's decision in this case, he did not or she did not rule on the cognizability of the family PSG. She said that the petitioner did not show that the harm was on account of. In other words, the nexus. There was no nexus between the harm that she is complaining of and the social group of family. So I don't know that necessarily sending it back to look at matter of LEA 3 or reverting that. If the nexus ruling is independent of any withdrawal of other BIA opinions. Well, I think that it's the LEA to see, you know, yes, the withdrawal of the vacation of LEA 2 was based on the decision in LEA 2 had to do with the cognizability of family as a PSG. The immigration judge in this case said, recognized that a family can be a cognizable particular social group, but didn't decide the case on that issue. Decided that case rather on the fact that she did not show that her harm was on account of her membership in that family. And you think we can affirm on that ground? Yes, I think you can affirm on that ground. If we think there's a question of jurisdiction or even a lack of jurisdiction, do you think we can take hypothetical jurisdiction in order to reach the merits and agree with you on the merits? The merits of her, of the mother's- Of the children's claims. Of the children's claims. I think that you can, I mean, again, I don't know for certain. But I think that you would not lose jurisdiction over the children's claims. But I don't, again, don't know how- No, that's not what I asked you. I understand whether we have jurisdiction of the children's claim is something that perhaps needs further consideration, maybe within the government. But if, in fact, we don't have jurisdiction, is this the kind of case we can take hypothetical jurisdiction and get to the merits and rule in the government's favor on the nexus ground? I honestly don't know the answer to that question, Your Honor. Okay. Can I just ask you, we've talked a lot about the withholding and the nexus. There is this cat claim out there. And I'm struck with respect to the boys that the entirety of the analysis is they have not been harmed in a way that would amount to torture in the past. And any fear at this point is too speculative to merit relief, given acknowledging the expert testimony at this point. Given the record in this case, was it incumbent on the judge to address the credible threats to the boys' safety and lives around this recruitment in the context of the cat claim? If I understand your question, you're asking did the judge not take into account the credible threats to these children? What indication, I guess, do we have that the judge did take it into account? I just read you what I read, what I read from the IJ's analysis at that point. I think that the immigration judge looked at all of the information that was available, including the petitioner's expert opinions, affidavit or report that he submitted, and decided the case based on all of that information. And do we know that because we're giving the IJ the benefit of the doubt? Or does the IJ, in the analysis, explain why the threats to these boys didn't rise to the level that would warrant cat relief? Well, I think the IJ said that they weren't tortured in the past. Yeah. So they weren't, because neither of the children were physically harmed, the two that are still part of the case, nor was the lead petitioner. So I think based on that, that's what the immigration judge was referring to, that no past torture and that any further, any future torture is speculative. But if somebody says, hypothetically, I'm going to kill you the next time I see you, and it's a credible threat. It's somebody who's done this to other people in the area. So I flee. You're saying the fact that I didn't get physically injured before I left makes it speculative that if I return, I face a greater, more likely than not, danger of torture? I guess it depends on, well, you said it's a credible threat. But there's other factors going into whether a threat rises to the level of torture. Right. And in this case, the immigration judge made that determination based on the record before it. Right. I guess what I'm trying to figure out, because I agree with you, these are very context dependent. And there's a lot of different factors that might cause you to say, in this case, it's not credible and it doesn't rise to the level. I'm not seeing where the IJ did that. And I think what I'm hearing you say is we can infer that the IJ did it because the IJ reached a conclusion? Well, I think the IJ looked at the fact that the one verbal threat came over a telephone from an unidentified individual, only identifying themselves as a gangster or as a gang member. The fact that it was a red truck that was supposedly cut off, according to the petition, was attempting to get her, based on her family relationship and or her resistance to gangs. That's also uncorroborated. And in fact, in some respects, is corroborated the other way. Because when she went to the police, the police told her that they were already searching for these people. So that would give the inference that it may not have anything to do with her family situation or her prior issues. We're talking about CAT, right? We don't care about nexus for CAT. Right, and I'm not talking about nexus, Your Honor, but I'm just saying that these are the things that he looked at as what might lead to or would take away from or add to the speculative nature of any future harm. And my understanding is, I guess, you would look at the IJ's evaluation of, for example, the phone call from the jail, which was addressed, talking to the mother, but said, I'm going to harm you and your family, which would include the kids. And he found that, sort of in his paragraph about CAT, as too speculative, among other things that rendered her fear under CAT as too speculative. And then when the IJ turns to CAT relief for the sons, says they have not been harmed in a way that would amount to torture in the past. And any fear at this point is too speculative to merit relief. We're supposed to, I suppose, presume that the IJ still has in mind the analysis that happened one page earlier saying, these same things are too speculative for the mother, are too speculative for the same reasons for the children. I would say that that's probably true, Your Honor. Okay, if there are no further questions, why don't we hear from Mr. DeGraff? You've reserved two minutes for rebuttal. Thank you very much. Well, just moving directly into that, the IJ did not have the benefit of this court's decision in D. Artiga v. Barr, 961 F. 3rd 586 decision. I'm sorry, could you give us that citation one more time and a little bit more slowly? Yes, of course. 961 F. 3rd 586, 2nd Circuit 2020, a BIA CAC claim denial reversed where the applicant testified credibly regarding serious individualized threats against her and her children and fled El Salvador promptly after the gang threatened her. That's exactly what happened here, exactly what happened here. So one, the IJ did not have the benefit of this. But I sort of, I have to agree with Your Honor, the judge looked at this and said, oh, it's just too speculative. But this court has also ruled that we've got to look at the country conditions taken together. And certainly the State Department report that was in evidence here all point to the interrelationship and interworkings of the police forces and the gangs, the MS-13 and the MS-18 in El Salvador. So hang on, can I just, I think I heard what you said, but I just want to repeat it back to make sure we don't understand you, misunderstand you. That in your view, the IJ did consider the phone call threats against the children and just for cat purposes and simply found them to be too speculative? Is that your understanding of the ruling? Or did I mishear? I may have misheard what you said. I just don't want to put words in your mouth. He didn't say anything with respect to that telephone call and the children. And to the extent that he acknowledged the telephone call relating to the mother's case, he certainly came down and said all of that would have been too speculative. So it sounds to me you're agreeing that the IJ rejected the cat claim for the children, at least in part because their fear is too speculative. Is it your view that the IJ failed, however, to consider the phone call to the mother in its cat analysis for the children? Yes, that, and not only that, Judge, but also the fact that Carlos and Cifredo, the two sons, the two elder sons were together nearby Grandma's house or something and were accosted by gang members and requested, I'm not going to rehash the facts, but they were accosted by gang members. That the IJ did talk about in the section on the kids, right? Not on the cat claim. No, I mean, do you really expect the IJ has to repeat every allegation, you know, within four or five sentences? Well, no, but I mean, the IJ here, again, was reading and interpreting these facts within the lens of the infirm case law that was vacated by Attorney General Garland. And I understand it was a separate case. Yes, and there's just, I mean, this case really requires a remand. And then on the, if I may, Judge, just on the... Why don't you take ten seconds, we'll give you ten seconds to wrap up. On the other issue, these children had filed their own 589, so they had their own claim, so even though they were consolidated for purposes of court convenience, they could have been severed at any time. And, in fact, Carlos, the eldest son, was severed by the judge from the rest of the claim. So they could have been severed. Okay, thank you both. Very helpful arguments. I think at this time we're not quite ready, but it is very possible. Watching CF, we might ask for supplemental briefing on the Bhaktapai Patel question, but I think we'll let you know if that's the case. Very good. So thank you both very much. Thank you, Your Honors. Thank you very much.